**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernesto GODOY, Fermin Enrique Bergouignan, Defendants-Appellants.**

No. 86–3118.

United States Court of Appeals,
Eleventh Circuit.

June 30, 1987.

---

Harry Solomon, Miami, Fla., for Godoy.

Joel Kaplan, Miami, Fla., for Bergouignan.

Garry J. Stegeland, Asst. U.S. Atty., Orlando, Fla., for the U.S.

Before CLARK, EDMONDSON and KEITH*, Circuit Judges.

CLARK, Circuit Judge:

This case is before this court for the second time. In *United States v. Bergouignan*, 764 F.2d 1503 (11th Cir.1985), we remanded the case to the district court for determinations relevant to defendants' Speedy Trial Act claims. On remand, the district court found that there was no violation of the Act, but that even if there was a violation, defendants were properly subject to reprosecution.

## I. BACKGROUND

On July 13, 1981, defendants Godoy, Bergouignan, and eight other persons not involved in this appeal, were arrested by officers of the United States Customs Service and deputies of the Brevard County Sheriff's Department. Upon boarding defendants' vessel (the CAPTAIN DAVE) and its companion vessel (the SHADOW), the officers discovered over 30,000 pounds of marijuana.

A complaint charging the ten arrestees with conspiracy to possess marijuana with intent to distribute and possession of mari-

* Honorable Damon J. Keith, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

juana with intent to distribute was filed in Orlando on July 14, 1981. The government dismissed the complaints, without seeking indictments, on September 16, 1981, sixty-five days after the arrests.

Federal agents continued their investigations and eventually brought the matter to the attention of state law enforcement authorities. The Brevard County Sheriff's Office sent their file to the State Attorneys' Office on March 24, 1982. Assistant State Attorney Kent LeBlanc and Wenton Patterson, then Executive Director of the Brevard County State Attorneys' Office, decided not to proceed with prosecution of the CAPTAIN DAVE/SHADOW arrestees until they contacted the Assistant U.S. Attorney in charge of the federal case to determine why the federal prosecution had been dismissed. LeBlanc unsuccessfully attempted to contact the Assistant U.S. Attorney assigned to the case by telephone, but did not attempt to contact him by mail. State prosecutors then decided not to file charges against the defendants because they were unable to contact the federal prosecutors and because they believed they would be unable to locate the defendants and bring them to trial in Brevard County.

From here, according to an Assistant U.S. Attorney, the case simply "fell through the cracks." No action was taken by federal or state prosecutors until 1983, when the U.S. Attorneys' Office in Orlando received inquiries from the press and a Congressional Office concerning the status of the case. Finally, on September 22, 1983, an indictment was returned against Godoy, Bergouignan, and eight others, charging them with the same offenses alleged in the July 1981 complaint. The trial began on February 6, 1984, and appellants were convicted.

In their first appeal to this court, appellants argued, *inter alia,* that the July 1981 complaint should have been dismissed with prejudice because the government failed to indict within the thirty-day period provided by 18 U.S.C. § 3161(b). We were unable to rule on this issue because the record was insufficient regarding the number of days excludable from the thirty-day period pursuant to 18 U.S.C. § 3161(h). We remanded, with directions that the district court examine the proceedings before the prior district judge to determine: (1) whether there was a violation of the Speedy Trial Act; and (2) if so, whether the dismissal should have been with or without prejudice. *Bergouignan,* 764 F.2d at 1507–08.

On remand, the district court found that there was no violation of the Act. Alternatively, even if there was a violation, the court found that the complaint should have been dismissed without prejudice.

## II. ANALYSIS

### A. *Violation of the Speedy Trial Act.*

█ Under the Speedy Trial Act, the government must indict a defendant within thirty days from the date on which the defendant was arrested or served with a summons. 18 U.S.C. § 3161(b). In calculating this thirty-day period, however, the periods of time set forth in 18 U.S.C. § 3161(h) are excludable. It is important to note that these periods of time are exclusions from, not extensions to or enlargements of, the thirty-day period of § 3161(b).

### 1. *The district court's computation.*

The district court found that the 65-day delay between the arrests and the dismissal did not violate the provisions of the Speedy Trial Act. The court found several individual days to be excludable under the Act. The court excluded July 13 (the day of the arrest) and July 14 (the day of defendants' initial appearance). The court also excluded September 16 (the date of the dismissal). These exclusions leave a total of sixty-two nonexcludable days.

The court was then confronted with several complicated problems. First, on July 28, the government asked for and received a thirty-day "extension" of time within which to indict. The authority for granting continuances (exclusions) under the Speedy Trial Act is found in 18 U.S.C. § 3161(h)(8), which provides:

(h) The following periods of delay shall be *excluded* in computing the time within

which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

\* \* \* \* \* \*

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that *the ends of justice* served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. *No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*

(B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or *because the facts upon which the grand jury must*

*base its determination are unusual or complex.*

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

(C) No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government. (emphasis added)

The district court found that since the original district judge failed to make the "ends of justice" findings on the record as required by § (8)(A), the thirty days (July 28–August 27) were not excludable under § 3161(h). The court went on, however, to treat the earlier court's order as a valid thirty-day "extension" of time:

> Because the government sought and obtained a 30-day extension, it had 60 days in which to indict the defendants or dismiss the complaint. Review of the motion and testimony at the hearing convinces the court that the extension of time was appropriate. *However, the days during the extension are not excludable because the findings required by § 3161(h)(8)(A) were not made.* The date the complaint was filed is not an includable day.... Therefore, the *sixty-day period* commenced on July 15, 1981, inclusive, and expired on September 12, 1981.

District Court Opinion at 7 (emphasis added). The government did not indict the defendants within the sixty days. Instead, the government moved to dismiss the indictment. This motion was granted on September 16, 1981, sixty-five days after the arrest.

The district court then proceeded to address appellants' claims that the Speedy Trial Act had been violated because of the government's failure to indict them within sixty days, and the government's claim that certain days were excludable pursuant to § 3161(h)(8).

The parties' disagreement centers on the excludability of the twenty-day period from July 29 through August 18. At a July 29 hearing, defendant Godoy made an oral motion to have a customs officer retain his rough notes. The magistrate indicated he would grant the motion, and directed counsel to file a written motion and a proposed order. Counsel served the motion and proposed order on August 4, and the magistrate signed the order on August 14. The order was finally filed with the clerk on August 18. Godoy argues that the magistrate decided the motion on July 29, and that the August 18 order was merely entered nunc pro tunc. According to his argument, the period from July 30 to August 18 should not be excludable. The government argues that the witness on the stand when defendant Godoy made his oral motion was DEA Agent Charles Fagan, whereas the written motion and subsequent order were directed against Customs officer McKenney. According to this argument, the magistrate took defendant's motion under advisement until the order was filed, and the twenty-day period therefore was excludable under 18 U.S.C. § 3161(h)(1)(F). The district court agreed with the government and excluded the twenty-day period.

By excluding this twenty-day period and by excluding July 28 (the date the government sought its "extension"), the district court was left with forty-one non-excludable days between the date of arrest and the date of dismissal. Because we find that the district court erred in holding that the government had sixty days in which to indict these defendants, we need not decide whether the court correctly excluded the July 30—August 18 period. The government's failure to indict these defendants within thirty non-excludable days of arrest constitutes a violation of the Speedy Trial Act.

In considering this problem, it is helpful to think of the Speedy Trial Act as constituting a time clock. An exclusion of time stops the clock from running. An extension or enlargement of time is comparable to setting the clock back a certain number of days.

On July 28, 1981, the government filed its motion for extension of time within which to indict alleging that "more than thirty days would be required to fully investigate the rather complex facts" and requested the court to "enter an order pursuant to 18 U.S.C. § 3161(h)(8)(A) and § 3161(h)(8)(B)(iii) allowing the United States time in excess of that allowed under Title 18 United States Code Section 3161(b), for the filing of any indictment in this matter." The district court, through a predecessor judge to the judge who entered the order presently on appeal, entered an ex parte order on July 28, 1981 granting the government an additional thirty days "from the date of arrest within which to file an indictment in this cause." This constituted an *enlargement* of the permissible pre-indictment period.

 Section 3161(b) upon which the government relied states that:

(b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

As is plain on the face of the statute, the only ground upon which a court may enlarge the thirty days into a sixty-day period for the filing of an indictment is when no grand jury has been in session during the first thirty-day period. While the government was authorized to seek additional time in which to file an indictment in accordance with § 3161(h)(8)(B)(iii), it was not entitled to an enlargement of the thirty

days into sixty days. Instead, such a period of delay may only be *excludable* in computing the time in which the indictment must be filed. § 3161(h). Certainly there are cases in which it would make no difference whether the period was enlarged or whether the time was excluded. However, in some cases, and this one in particular, the distinction is important as will be illustrated in the following chart.

| EXCLUDED | | | NOT EXCLUDED |
|---|---|---|---|
| Date of Arrest | 7/13 | See 767 F.2d 765, 768 | |
| Date of Complaint | 7/14 | See 723 F.2d 791, 793 | |
| | 7/15 | | |
| | | Time Clock Running | Government's Motion to Extend |
| | 7/27 | | 30 Days and |
| | | | Court's Order 7/28 See § 3161 (h)(1)(F) |
| Preliminary Hearing, Motion by Defendant Godoy, Consideration of Motion by Magistrate | 7/29 | See § 3161(h)(1)(F) | |
| Date of Filing of Order | 8/18 | | |
| | | | 8/27 |
| | 8/28 | | |
| | | Time Clock Running | |
| | 9/15 | | |
| Date of Dismissal | 9/16 | See 766 F.2d 465 | |

■ In this case, the government filed its motion for an extension on July 28. As is discussed above, this motion could only be considered as a request for an *exclusion* of time. Even if this motion had been properly granted, the excluded period would have begun on July 29 and, if the district court believed thirty days was appropriate, would have ended on August 27. This thirty-day period overlaps the twenty-day period (July 30—August 18) excluded by the district court under § 3161(h)(1)(F). Clearly, the overlapping days may be excluded only once. *See United States v. Robinson,* 767 F.2d 765, 770 (11th Cir. 1985). At best, the government would be allowed to exclude the entire thirty-day period from the sixty-five day pre-dismissal period toward reaching the Speedy Trial Act limit of thirty days. By excluding the twenty-day period (July 30–August 18) *and*

enlarging the indictment period to sixty days, the district court counted the twenty-day period twice and effectively permitted the government to exclude fifty days when only thirty days had passed. Such double counting of excludable time cannot be permitted under the Speedy Trial Act. Since the government does not claim that it dismissed the charges against these appellants within thirty non-excludable days of arrest, the district court erred in concluding that there was no violation of the Act in this case.

2. *Appellate review of the district court's computation.*

We have reviewed the briefs filed with the panel which heard the first appeal, *United States v. Bergouignan,* and find that then counsel for Bergouignan and Go-

doy conceded in their briefs that the government had sixty days in which to indict the defendant. *See* Godoy's Brief at 2 ("the government had sixty days from July 13, 1981....") and Bergouignan's Brief at 17, *et seq.* The briefs and argument in this appeal focused almost entirely on whether the twenty days between July 29 and August 18 were excludable. We have determined that, whether or not this twenty-day period is excludable, the Speedy Trial Act was violated in this case because the permissible pre-indictment period was improperly extended to sixty days.

▮ The general rule, of course, is that an appellate court will not consider a legal issue unless it was presented to the trial court. *See Dean Witter Reynolds v. Fernandez*, 741 F.2d 355, 360 (11th Cir.1984). *Roofing & Sheet Metal Serv. v. LaQuinta Motor Inns*, 689 F.2d 982, 989 (11th Cir. 1982). This rule, however, is not jurisdictional and may be waived by this court in certain exceptional circumstances. *See Dean Witter*, 741 F.2d at 360–61 & n. 21. Thus, on rare occasions, we may exercise our jurisdiction when the proper resolution of a legal issue is "beyond any doubt." *See Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *accord Dean Witter*, 741 F.2d at 361 (dictum). Our decision to consider an argument for the first time is left to our discretion, based on the facts of each case. *See Singleton*, 428 U.S. at 121, 96 S.Ct. at 2877. This case presents a rare situation in which we will exercise that discretion, even though the computation issue has not been raised by either party.

▮ Our decision to undertake this sua sponte review is not made lightly and we stress that the particular facts of this case and the posture in which it has been argued, decided and presented to us are significant to our decision to proceed. That is, if the issues raised in this appeal were unrelated to computation of the pre-indictment period under the Speedy Trial Act, we would not take note of the legal error relating to that portion of the Act, for such action would constitute judicial overreaching. But the issues in this case relate solely to the Speedy Trial Act and, especially, its computations. The district court made detailed legal and factual findings as to the applicable indictment period and the number of days excludable therefrom. We are not overreaching when we address errors of law made by the district court in determining the legal framework from which the applicable indictment period is computed, when the parties have focused their attention throughout on the proper number of days that can be excluded from that period. This is especially true since the district court in fact addressed the issue of whether the pre-indictment period had been "extended" to sixty days. Under these narrow facts, we may review the district court's computation, even in areas not raised by appellants.

We are aware that some language in *Bergouignan* indicates our acceptance of the sixty-day extended indictment period as a valid measuring point in this case. *See* 764 F.2d at 1506 & n. 6, 1508. We also recognize, however, that the record was insufficient at that time for a proper analysis of the Speedy Trial Act issues. Because *Bergouignan* remanded this issue to the district court, we are not bound by any comments that were not necessary to the disposition of that case. The district court made de novo determinations regarding the speedy trial issues, including its finding that the indictment period had been extended to sixty days. Thus, our review of the district court's findings is not limited by the facts and circumstances assumed in the *Bergouignan* opinion.

### B. *Dismissal With or Without Prejudice.*

Having decided that the initial complaint against these defendants was dismissed outside the permissible period under the Speedy Trial Act, we must now decide whether the government was properly allowed to reprosecute these defendants in 1983. *See* 18 U.S.C. § 3162.

Early versions of the Speedy Trial Act provided for mandatory dismissal with prejudice to remedy violations of the Act. As is fully explained in *United States v. Caparella*, 716 F.2d 976, 978–80 (2d Cir.1983),

opposition to the harshness of the sanction led to the compromise version contained in 18 U.S.C. § 3162(a).[1] That section requires a balancing of factors in determining whether cases involving excess pre-indictment delay should be dismissed with or without prejudice: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of reprosecution on the administration of the Act and on the administration of justice. We have held that neither of these dismissal sanctions has priority under this section. *United States v. Russo,* 741 F.2d 1264, 1266 (11th Cir. 1984). Still, in order to prevent abuse of the Speedy Trial Act's deadlines, we require a showing of "some affirmative justification" by the government to warrant a dismissal without prejudice. *Id.* at 1267. Aside from this limitation, the choice of sanction is left to the sound discretion of the district court after consideration of the statutory factors. *Id.; see United States v. Brown,* 770 F.2d 241, 242 (1st Cir.1985). The district court's decision that the dismissal should have been without prejudice will stand, unless that court has abused its discretion.

Initially, we note that the court below was placed in the difficult position of reviewing the proceedings before another district judge in order to determine whether the prior judge should have dismissed the complaints against appellants with or without prejudice. As former Chief Judge Godbold recently explained, "[t]his case demonstrates the difficulty a trial court can create for itself, and for a court on appeal, when it does not properly act on and record events that bear on compliance with the Speedy Trial Act." *United States v. Elkins,* 795 F.2d 919, 921 (11th Cir.1986). If the Act had been administered properly

in this case, the original district judge would have decided, when the government sought to dismiss the complaints, whether the dismissal was with or without prejudice. The court's failure to make such a finding is largely attributable to the parties' failure to raise the § 3162 issue to the court at that time. Upon being notified of the government's plan to dismiss the complaints, defendants should have requested a hearing, raised their Speedy Trial claims, and sought dismissal with prejudice. We trust that as the bar becomes more familiar with the workings of the Act, such procedural errors will become less frequent. Nevertheless, we must decide in this case whether the court below abused its discretion in holding that the complaint should have been dismissed without prejudice.

### 1. *Seriousness of the offense.*

It cannot be disputed that smuggling 30,000 pounds of marijuana is a serious offense. *See Russo,* 741 F.2d at 1267.

### 2. *Facts and circumstances leading to the dismissal.*

The district court determined that the "facts and circumstances leading to a dismissal show that any untimeliness was the result of an oversight by the government." Of course, the district court made this finding without knowledge of the true Speedy Trial Act violation in this case (i.e., the improper enlargement of the pre-indictment period). In fact, neither the government nor Godoy's counsel perceived the nature of the violation. This is perhaps attributable to the fact that the Act was still new, and the particular violation is unique. Under the circumstances of this case, we will not penalize the government for its conduct, just as we did not penalize appellants for their failure to raise this

---

**1.** The portion of § 3162(a) relevant to undue pre-indictment delay is as follows:

 **§ 3162. Sanctions**

 (a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in

such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

issue on appeal. *Cf. United States v. Tunnessen,* 763 F.2d 74, 79 (2d Cir.1985) (dismissal without prejudice where "error that occurred is noncompliance with a procedural requirement clarified for this circuit by today's decision"); *Brown,* 770 F.2d at 244–45 (facts and circumstances did not favor either sanction where violation was result of district court's failure to anticipate appellate court's ruling).

Furthermore, the government spent a large portion of the pre-dismissal period investigating this case to obtain information about the financial backers of the drug smuggling involved in this case. The government recognized that appellants most likely were the "mules" in a larger drug operation. The district court recognized the need for further investigation when it granted the government's request for additional time to indict. We find there is at least some affirmative justification for the pre-dismissal delay in this case. The district court did not abuse its discretion in finding that the complaint should have been dismissed without prejudice.

### 3. *Impact of reprosecution on administration of Act and on administration of justice.*

The district court's order indicates its belief that the third § 3162 factor is neutral. This is incorrect. There is some tension between the administration of the Act

and the administration of justice. Defendants can always argue that the minimal sanction of dismissal without prejudice takes the teeth out of the Act's requirements. In response, the government can always argue that reprosecution furthers the public's interest in bringing criminals to trial. In *Russo,* we noted that these two "standard" arguments neutralize each other. *Id.* at 1267.

 *Russo* does not hold that this third factor is *always* neutral. Although there is little legislative history, we do not believe that Congress placed this language in the Act without some purpose. In some ways, this third factor is a restatement of the other two. If a violation of the Act is quite egregious, reprosecution will have more of a negative effect on the administration of the Act. Similarly, if a crime is quite serious, barring reprosecution will have a severe impact on the administration of justice. The third factor makes clear the flexible, balancing approach required under § 3162(a)(1). In addition, it provides authority for considering such aggravating and mitigating factors as the length of the delay [2] and the prejudice to the defendant. In short, this third factor permits each side to submit any relevant consideration not covered by the other two statutory factors. Appellants have failed to show any unique circumstances which would mandate weighing this third factor in their favor. As a result, we cannot say that the district court

---

**2.** The length of delay can sometimes be enough, by itself, to justify dismissal with prejudice. *See United States v. Stayton,* 791 F.2d 17, 21 (2d Cir.1986) (23–month delay between indictment and prosecution was "dominating factor" in decision to dismiss with prejudice).

Appellants contend the district court should have considered the entire period of delay from the filing of the complaint in July, 1981 until the indictment in September, 1983. Obviously, the two-year period during which the case "fell through the cracks" is the most significant (and unexcused) delay in the prosecution of this case. Equally as clear, however, is the fact that this two-year period is irrelevant for purposes of the Speedy Trial Act. The Act's limitations apply only when the defendant is under arrest or under indictment. *See United States v. Puett,* 735 F.2d 1331, 1333–34 (11th Cir.1984) (after dismissal of complaint, Act's time limits begin to run anew from the date subsequent indictment is filed).

Any challenge to appellants' convictions based on this two-year delay would arise under the due process clause. *See United States v. Hicks,* 798 F.2d 446, 450 (11th Cir.1986) ("delay between dismissal of ... earlier charges and subsequent arrests or indictment must be scrutinized under the due process clause"). To sustain such a due process claim, the defendant must show (1) that substantial prejudice resulted because of the government's delay; and (2) that the prosecution intentionally employed the delay to obtain a tactical advantage. *Hicks,* 798 F.2d at 450 (quoting *United States v. Sanchez,* 722 F.2d 1501, 1509 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984)). Appellants do not challenge their convictions on the basis of the due process clause, so we need not inquire into the circumstances surrounding the two-year delay.

abused its discretion in allowing appellants to be reprosecuted.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.